IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE LUIS GUAITA QUINAPANTA,

                Petitioner,

v.

PAMELA BONDI, Attorney General,
KRISTI NOEM, Secretary, U.S.
Department of Homeland Security,
DEPARTMENT OF HOMELAND SECURITY,
TODD M. LYONS, Acting Director of Immigration
and Customs Enforcement, IMMIGRATION
AND CUSTOMS ENFORCEMENT,
SIRCE OWEN, Acting Director for the Executive
Office for Immigration Review,
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW, MARTHA MEDINA-MALTES,
Acting Director, Chicago Field Office Immigration
and Customs Enforcement, and MATT
IZZARD, Sheriff of Douglas County,

                Respondents.

OPINION AND ORDER

25-cv-795-wmc

---

     Petitioner Jose Luis Guaita Quinapanta ("Quinapanta") is presently in custody of United States Immigration and Customs Enforcement ("ICE") at the Douglas County Jail in Superior, Wisconsin. Quinapanta has filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he is being unlawfully detained by the respondents while in removal proceedings without a bond hearing. (Dkt. #1.) The parties agreed to an expedited briefing schedule. (Dkt. #5.) Quinapanta has filed a memorandum in support of his petition, and the federal officials who are reportedly responsible for his detention (collectively, "respondents") have filed a brief in response. (Dkts. #8, #10.) For

the reasons that follow, Quinapanta's petition will be granted in part and respondents will be ordered to provide him with a prompt bond hearing under 8 U.S.C. § 1226(a).

## BACKGROUND[1]

Along with many others like it, this proceeding has been filed by a noncitizen swept up by ICE as part of increased efforts by the current administration to enforce the United States' immigration laws and detain those individuals without bond pending removal proceedings. Petitioner Quinapanta is a native and citizen of Ecuador, who entered the United States without inspection or contact with immigration officials in 2021 and has resided here since. He was taken into custody by ICE on September 4, 2025, during an immigration enforcement action in Lakeville, Minnesota. (Dkt. #15-2, at 3.) When confronted by ICE officers, Quinapanta admitted that he was in the United States without permission or pending application for lawful status. (*Id*.) Quinapanta, who has a wife and two children, has no criminal record beyond entering the country without authorization. (*Id*. at 3-4; Dkt. #15-3, at 5-6.)

The same day Quinapanta was apprehended, an immigration officer with the Department of Homeland Security ("DHS") issued a Form I-200 warrant for his arrest based on "reliable" information, including Quinapanta's voluntary statements, that he "either lacks immigration status or notwithstanding such status is removable under U.S.

---

[1] Unless otherwise indicated, the facts set forth in this section are taken from the petition. (Dkt. #1.) Because respondents have not disputed any of the material facts or evidence offered by petitioner, but rather rely on legal arguments (dkt. #10), the court accepts these facts as true for purposes of this opinion.

immigration law." (Dkt. #15-1, at 2.) Quinapanta was also served with a Notice to Appear for removal proceedings under § 240 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1229a. (Dkt. #11-1.) Specifically, Quinapanta was charged with removability under § 212(a)(6)(A)(i) of the INA (codified at 8 U.S.C. § 1182(a)(6)(A)(i)), as a noncitizen who is "present" in the United States after arriving at an unknown time and place "without being admitted or paroled[.]" (*Id.*)

Quinapanta contends that his detention is governed by 8 U.S.C. § 1226(a), which authorizes discretionary detention and a bond hearing before an immigration judge, and that he has been denied an opportunity to request a bond. Specifically, he claims immigration officials have unlawfully determined that he is an "applicant for admission" subject to mandatory detention and not eligible for a bond under 8 U.S.C. § 1225(b)(2), pointing to a new policy issued by DHS on July 8, 2025, that instructs all ICE employees to consider any noncitizen who is inadmissible under § 1182(a)(6)(A)(i) as subject to mandatory detention under § 1225(b)(2), rather than § 1226(a). (Wilson Decl. (dkt. #11-2) at 1.) Quinapanta remains in custody at the Douglas County Jail pending removal proceedings, during which he appeared for an initial hearing before an immigration judge on October 23, 2025. (Dkt. #13-1.) His next hearing is scheduled for November 20, 2025. (Dkt. #14-1.) In the meantime, Quinapanta has filed an application for asylum and withholding of removal to Ecuador because he fears being persecuted or killed based on his indigenous status. (Dkt. #15-3.)

OPINION

On September 23, 2025, petitioner filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241, and requested expedited consideration. (Dkt. #1.) As an initial matter, a district court is authorized to grant a writ of habeas corpus if the petitioner shows that he is "in custody" in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings under § 2241 are available as a forum for statutory and constitutional challenges to immigration detention orders, including decisions about eligibility for release on bond. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (recognizing habeas jurisdiction under § 2241 over a noncitizen's challenge to detention without bond while awaiting removal). As a result, the court is satisfied that it has subject matter jurisdiction over the petition.[2]

Petitioner has resided in the United States since 2021 and seeks habeas corpus relief under 28 U.S.C. § 2241 on the grounds that he is not a recent arrival "seeking admission" to the United States, making his detention subject to the requirements of 8 U.S.C. § 1226(a), not § 1225(b)(2)(A). Specifically, petitioner requests the opportunity to seek a bond at a custody redetermination hearing in which he is not treated as detained under § 1225(b)(2)(A), but is instead treated as a detainee under § 1226(a) with a right to a bond

---

[2] Petitioner also invokes the federal mandamus statute, 28 U.S.C. § 1361; the All Writs Act, 28 U.S.C. § 1651; the Declaratory Judgment Act, 28 U.S.C. § 2201; and the Administrative Procedure Act, 5 U.S.C. § 702. (Dkt. #1, ¶ 7.) Respondents do not contest jurisdiction, nor do they raise the issue of administrative exhaustion, which is required in a habeas corpus proceeding but may be excused, *Gonzalez v. Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004), or waived, *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987).

hearing. (Dkt. #1, ¶ 74.) He further argues that he has been denied a bond hearing in violation of the Due Process Clause of the Fifth Amendment and 8 C.F.R. §§ 236.1, 1003.19, and 1236.1, which govern bond procedures during immigration removal proceedings. (Dkt. #1, ¶¶ 67, 68, 91.)

The primary issue in this case, which has now been raised and litigated in countless other cases in district courts across the country, involves the interplay of two statutes found in the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which governs detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. As outlined below, while § 1225 mandates detention without eligibility for a bond hearing, § 1226 establishes a discretionary framework for detention and bond. Thus, the pending petition turns on which provision is the appropriate statutory framework for determining eligibility for a bond hearing for noncitizens like petitioner, who are long-term residents in the country and are being held pending formal removal proceedings for entering the United States without inspection.

## I. Text of Relevant Statutes

By its title, § 1225 addresses "[i]nspection by immigration officers" and "expedited removal of inadmissible *arriving* aliens."[3] 8 U.S.C. § 1225 (emphasis added). Section 1225 states that "[a]ll aliens . . . who are *applicants for admission* or *otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration

---

[3] The immigration statutes refer to noncitizens as "aliens." An "alien" is defined to mean any person not a citizen or national of the United States. 8 U.S.C. § 1101(a)(3). Because the terms "noncitizen" and "alien" are equivalent, *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020), both are used interchangeably in this opinion.

5

officers." 8 U.S.C. § 1225(a)(3) (emphasis added). In the immigration context, the terms "admitted" and "admission" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1225 divides "arriving" aliens who are "seeking admission" into two separate categories: those subject to expedited removal under § 1225(b)(1); and those who are placed in formal removal proceedings before an immigration judge under § 1225(b)(2). Under § 1225(b)(1), if an immigration officer determines during the inspection process that an alien is inadmissible for having engaged in fraud or misrepresentation under § 1182(a)(6)(C) or for lack of valid documentation under § 1182(a)(7), the officer "shall" order the alien removed from the United States on an expedited basis "without further hearing or review," unless the alien indicates an intention to apply for asylum or expresses a fear of persecution if removed, 8 U.S.C. § 1225(b)(1)(A)(i).

Under § 1225(b)(2), if the examining immigration officer determines that an alien seeking admission "is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for formal removal proceedings under § 1229(a). 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Subject to limited exceptions not applicable here,[4]

---

[4] "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 CV 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018)). Parole "into the United States" under § 1182(d)(5)(A) permits a noncitizen to physically enter the country, subject to a reservation of rights by the government to treat the noncitizen "as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)).

detention under § 1225(b)(2) is considered mandatory because individuals detained under § 1225 are not entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

Section 1226 addresses "[a]pprehension and detention of aliens" who are not in the process of seeking admission to the United States. The Supreme Court has previously held that this provision governs detention of noncitizens who are "*already in the country*." *Jennings*, 583 U.S. at 288-89 (emphasis added). Section § 1226(a) applies to any alien who is arrested and detained "[o]n a warrant issued by the Attorney General," entitling a noncitizen to the "usual removal process," including a wider range of due process protections. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Specifically, § 1226(a) provides that the Attorney General or her designee: (1) "may continue to detain the arrested alien"; (2) "may release" the alien on "bond"; or (3) "may release" the alien on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2).[5] Thus, § 1226(a) "establishes a discretionary detention framework." *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025); *see also Jennings*, 583 U.S. at 288 (same).

More specifically, under this framework, a noncitizen apprehended and detained by

---

[5] Although the relevant statutory sections refer to the Attorney General, respondents explain that all immigration enforcement and administration functions, with few exceptions, were transferred to the Secretary of DHS by the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). (Dkt. #10, at 7 n.6.) In particular, the Attorney General retains authority over detention decisions, which is delegated to immigration judges, *see* 8 C.F.R. § 1003.19(d), although this authority is shared with DHS, because DHS officials "make the initial determination whether an alien will remain in custody during removal proceedings." (Dkt. #10, at 7 n.6.) (quoting *Matter of D-J-*, 23 I. & N. Dec. 572, 574 n.3 (A.G. 2003)).

7

a DHS officer under § 1226(a) may request a bond hearing before an immigration judge. The details of the bond procedure are set forth at 8 C.F.R. §§ 236.1, 1003.19 and 1236.1. According to these procedures, DHS officials must make an individualized initial custody determination, in which officials may release the alien if they determine "that such release would not pose a danger to property or persons, and … the alien is likely to appear for any future proceedings." 8 C.F.R. § 236.1(c)(8). If DHS officials decide to keep the alien detained, the person may request a bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1), 1003.19. At that time, the alien may be released upon a showing by clear and convincing evidence that he or she is not a danger to the community or a flight risk. 8 C.F.R. §§ 236.1(c)(3), 1236.1(c)(3). Moreover, the government bears the burden to prove that continued detention is justified. *Gomes*, 2025 WL 1869299, at *2; *Lopez-Arevelo v. Ripa*, No. 25-cv-337, 2025 WL 2691828, at *13 (W.D. Tex. Sept. 22, 2025).

By contrast, and while not applicable here, detention remains mandatory under § 1226(c) for any noncitizen who has been convicted of an "aggravated felony," which is defined in 8 U.S.C. § 1101(a)(43) to include a laundry list of specified offenses and any "crime of violence" punishable by imprisonment for at least one year. The Laken Riley Act, enacted by Congress in January 2025, expanded the mandatory detention requirement found in § 1226(c) to a new category of noncitizens, but only where two criteria are met. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)). Under § 1226(c)(1)(E), the Attorney General must also detain a noncitizen if he: (i) is inadmissible because he is present in the United States without being admitted or paroled,

8

8 U.S.C. § 1182(a)(6)(A), obtained documents or admission through misrepresentation or fraud, *id*. § 1182(a)(6)(C), *or* lacks valid documentation, *id*. § 1182(a)(7); *and* (ii) is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," *id*. § 1226(c)(1)(E)(i)-(ii).

**II. Application of Statutes to Petitioner**

Respondents argue that petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2) because he is a noncitizen who is present in the United States without inspection and, therefore, he is deemed an "applicant for admission." (Dkt. #10, at 2.) In particular, respondents point to § 1225(a)1), entitled "Aliens treated as Applicants for Admission," which states as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). Since petitioner is plainly present in the United States without having been admitted, therefore, respondents argue that he is properly detained without bond as an alien "seeking admission" for purposes of § 1225(b)(2). (Dkt. #10, at 10.)

When read in isolation, respondents' argument seems persuasive. However, as numerous other district court have held, this court must consider § 1225 in context and apply traditional rules of statutory interpretation. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014). "As with all questions of statutory interpretation, [courts must]

9

start with the text of the statute to ascertain its plain meaning." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). In ascertaining a statute's plain meaning, a court "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Further, unless words are otherwise defined, they "will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (citation omitted).

For his part, petitioner argues that 8 U.S.C. § 1226(a) controls and that he is entitled to a bond hearing because he was *not* "seeking admission" at the border or other port of entry at the time he was apprehended such that § 1225(b)(2) applies. Respondents neither dispute that petitioner had been residing in the United States for several years before his encounter with ICE agents, nor that he was apprehended while "already in the country." *Jennings*, 583 U.S. at 288. Respondents also neither attempt to explain how their interpretation squares with the Supreme Court's interpretation of these provisions in *Jennings*, nor offer any persuasive reason that petitioner's detention should not be governed by § 1226(a).

To begin, the record supports the petitioner's argument for application of § 1226(a), which entitles him to an individualized bond hearing before an immigration judge. In particular, after his arrest, petitioner was served with a Form I-200 warrant issued by DHS. (Dkt. #15-1, at 2.) The warrant specifically references INA § 236 as codified at 8 U.S.C. § 1226. (*Id.*) Indeed, the plain terms of § 1226(a) authorize the arrest and detention of an alien pending a decision on removability "[o]n a warrant issued by the Attorney

General." 8 U.S.C. § 1226(a).  It also makes sense that § 1226(a) would apply under these circumstances given that another provision in the INA, codified at 8 U.S.C. § 1357(a), limits the authority of an immigration official to apprehend a noncitizen without a warrant to those individuals who, in the official's presence, is attempting to enter the United States in violation of the law or to prevent illegal entry *within a distance of 25 miles of an external border*, which is more consistent with an arriving alien such that § 1225(b)(2) would apply. Tellingly, the Notice to Appear issued to petitioner, along with the warrant for his arrest, also checked the box labeled:  "You are an alien *present* in the United States who has not been admitted or paroled," rather than the box labeled "You are an *arriving* alien."  (Dkt. #11-1, at 1 (emphasis added).)   This further supports the conclusion that § 1226(a) applies, rather than § 1225(b)(2).

In addition, petitioner persuasively argues that the applicability of § 1226(a) is consistent with previous agency practice from 1996 through 2025 (dkt. #8, at 28), which instructed that "non-criminal aliens" who were "present without having been admitted or paroled (formerly referred to as aliens who entered without inspection)," like petitioner, were "eligible for bond and bond redetermination" despite being considered "applicants for admission."  Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 10323 (March 6, 1997).  While the Supreme Court has now held that courts need not defer to an agency's interpretation of the law it is directed to enforce where a statute is ambiguous, courts may refer to "interpretations of those responsible for implementing particular statutes" when exercising their independent judgment as to the meaning of

11

statutory provisions. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). This includes an interpretation by the executive branch that was "issued roughly contemporaneously with enactment of the statute [that] remained consistent over time." *Id*. at 386. In particular here, the court finds the application of a statute, adoption of regulations, and a long-standing practice that remained uniform for approximately 29 years after the IIRIRA was enacted in 1996 are all persuasive indications that aliens in petitioner's position are, at a minimum, eligible to be considered for release on bond, subject to conditions imposed by immigration officials or an immigration judge despite the provision in § 1225(a)(1) may arguably permit aliens to be deemed applicants for admission under more ambiguous circumstances.

While acknowledging respondents have now taken the position that detention is mandatory for *all* aliens found present in the United States without admission or inspection, regardless of their criminal record (or as here, lack thereof), this abrupt change in policy contradicts how the Supreme Court has traditionally construed the relationship between § 1225(b) and § 1226(a). Specifically, as noted above, the Supreme Court has interpreted § 1225(b) to govern "aliens seeking admission into the country" and § 1226(a) to govern "aliens already in the country" who are subject to removal proceedings. *Jennings*, 583 U.S. at 289. This interpretation is particularly significant when considered in historical context, since "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have

12

come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."). Thus, for those who have already entered to United States, "the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma*, 357 U.S. at 187 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). Against this longstanding consistent interpretation, never corrected by any remedial legislation over decades, respondents offer no basis to conclude that Congress's actual intention at the time enacted was for § 1225(b)(2) to apply to noncitizens like petitioner, who have been detained pending removal after being present in the United States for several years. *Hasan v. Crawford*, No. 1:25-cv-1480, 2025 WL 2682255, at *8 (E.D. Va. Sept. 19, 2025).

Respondents' interpretation is particularly problematic when considered alongside the mandatory detention scheme enacted in § 1226(c). If anything, respondents' new interpretation of § 1225(b)(2) would render meaningless the recently enacted amendment to § 1226(c) in the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2005) (codified at § 1226(c)(1)(E)), which *expanded* the criteria for mandatory detention to include aliens like petitioner who are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled) *and* have been arrested for, charged with, or convicted of certain crimes, none of which are applicable here. Indeed, "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation and internal quotation marks omitted). Moreover, this principle "applies to

13

interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593, 608 (2010) (citation omitted). Specifically, if respondents' newly minted interpretation of § 1225(b)(2) were correct, mandatory detention would apply to *all* noncitizens present in the United States who have not been admitted or paroled, giving Congress no reason to enact § 1226(c)(1)(E) and rendering the Laken Riley Act pointless, just as other courts have already found. *See Maldonado v. Olson*, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Finally, petitioner correctly points out that more than 45 district courts have now rejected similar arguments made by respondents here and ordered bond hearings for noncitizens who, like petitioner, were apprehended within the United States years after entering without admission or inspection unless implicated by any criminal activity covered by § 1226(c). (Dkt. #8, at 27-28.)[6] These decisions, along with a growing number of

---

[6] The court does not list all of the cases cited by petitioner due to the volume, but rather notes the following decisions are among the most thoroughly reasoned and persuasive: *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256-61 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv011571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. 25-cv-2157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. 25-cv-2157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *dos Santos v. Noem*, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, No. 25-CV-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Kostak v. Trump*, No. 3:25-cv-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-00326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Sampiao v. Hyde*, No. 1:25-cv-11981, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Hasan v. Crawford*, No. 1:25cv1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Beltran Barrera v. Tindall*, No. 4:25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Campos Leon v.*

others now including this court have concluded that "the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades" support its application to noncitizens in petitioner's position. *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (citations omitted); *Rodriguez v. Bostock*, No. 3:25-cv-5240, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases and noting that "[e]very district court to address" the issue "has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice").

In contrast, respondents cite only four district court decisions that have adopted their interpretation of § 1225(b)(2) and applied it to a noncitizen apprehended well within in the United States borders. (Dkt. #10, at 10; Dkt. #16.)[7] Respondents note further that the Board of Immigration Appeals recently affirmed an immigration judge's decision to deviate from longstanding agency practice by applying § 1225(b)(2) to deny bond to a

---

*Forestal*, 1:25-cv-1774, 2025 WL 2694763 (S.D. Ind. Sept. 22, 2025); *Chogllo Chafla v. Scott*, No. 2:25-cv-437, 2025 WL 2688541 (D. Me. Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. 25-cv-337, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Giron Reyes v. Lyons*, No. 25-cv-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Lepe v. Andrews*, No. 1:25-cv-1163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Rodriguez v. Bostock*, No. 3:25-cv-5240, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); *Echevarria v. Bondi*, No. 25-cv-3252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Alejandro v. Olson*, No. 1:25-cv-2027, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); *Puga v. Krome*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); *Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572 (D.N.J. Oct. 22, 2025); *Sanchez v. Olson*, No. 25-cv-12453, 2025 WL 3004580 (N.D. Ill. Oct. 27, 2025); *Valverde v. Olson*, No. 25-cv-1502 (E.D. Wis. Oct. 29, 2025); *Beltran v. Noem*, No. 25-cv-2650, 2025 WL 3078837 (S.D. Cal. Nov. 4, 2025).

[7] *See Pena v. Hyde*, No. 25-cv-11983, 2025 WL 2108913 (D. Mass. July 28, 2025); *Chavez v. Noem*, No. 3:25-cv-2325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Lopez v. Trump*, No. 8:25-cv-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Cirrus Rojas v. Olson*, No. 25-cv-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025).

noncitizen who had surreptitiously entered the United States without inspection and had been living in the country for years without lawful status. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228-29, 2025 WL 2674169, at *12 (B.I.A. 2025). However, *Hurtado* is not binding, and other district courts have rejected its reasoning as incorrect or unpersuasive for reasons adopted above in this opinion. *Beltran Barrera v. Tindall*, No. 3:25-cv-541, 2025 WL 269565, at *5 (W.D. Ky. Sept. 19, 2025); *Valencia v. Noem*, No. 25-cv-12829, 2025 WL 3042520, at *3 (N.D. Ill. Oct. 31, 2025); *Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (collecting cases that have rejected *Hurtado*).

Similarly, with only one exception, district courts within the Seventh Circuit have also uniformly followed the majority of other courts holding in favor of petitioner's interpretation and finding § 1226(a) applicable.[8] After considering the plain language of § 1225 and § 1226 in the overall context of the INA, this court also finds that petitioner's detention as a noncitizen present in the United States for several years without being admitted or paroled is governed by the discretionary detention provision found in § 1226(a) and not the mandatory detention provision found in § 1225(b)(2).

---

[8] *See Campos Leon v. Forestal*, 1:25-cv-1774, 2025 WL 2694763 (S.D. Ind. Sept. 22, 2025); *Alejandro v. Olson*, No. 1:25-cv-2027, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 2938779 (N.D. Ill. Oct. 16, 2025); *H.G.V.U. v. Smith*, No. 25-cv-10931, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025); *Padilla v. Noem*, No. 25-cv-12462, 2025 WL 2977742 (N.D. Ill. Oct. 22, 2025); *Patel v. Crowley*, No. 25-cv-11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); *Sanchez v. Olson*, No. 25-cv-12453, 2025 WL 3004580 (N.D. Ill. Oct. 27, 2025); *Valverde v. Olson*, No. 25-cv-1502 (E.D. Wis. Oct. 29, 2025); *Singh v. Bondi*, No. 1:25-cv-2101, 2025 WL 3029524 (S.D. Ind. Oct. 30, 2025); *Valencia v. Noem*, No. 25-cv-12829, 2025 WL 3042520 (N.D. Ill. Oct. 31, 2025); *Flores v. Olson*, No. 25-cv-12916, 2025 WL 3063540 (N.D. Ill. Nov. 3, 2025); *but see Cirrus Rojas*, 2025 WL 3033967 (concluding that the petitioner, who was present in the U.S. without inspection, met the definition of an applicant for admission governed by § 1225(b)(2) and was subject to mandatory detention).

Accordingly, petitioner has shown that he is being unlawfully held without a bond hearing before an immigration judge and is entitled to habeas corpus relief under 28 U.S.C. § 2241.[9]

## ORDER

IT IS ORDERED that:

1) The petition for a writ of habeas corpus filed by Jose Luis Guaita Quinapanta (dkt. #1) is GRANTED.

2) Within **seven (7) days** of the date of this order, respondents shall afford petitioner a bond hearing before an immigration judge under 8 U.S.C. § 1226(a).

3) The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 12th day of November, 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

---

[9] Respondents have not addressed any of petitioner's other claims for relief, limiting their opposition to a new interpretation of § 1225 and § 1226. However, having concluded that petitioner is entitled to relief in the form of a bond hearing based on the unlawfulness of his detention pursuant to § 1225(b)(2), the court finds his remaining claims for relief to be moot.